**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 12-20786-CIV-SEITZ/SIMONTON

ACUSHNET COMPANY, *et al.*,

        Plaintiffs,

vs.

100GOLFCLUBS.COM, *et al.*,

        Defendants.

_____/

## ORDER GRANTING TEMPORARY RESTRAINING ORDER *EX PARTE*

THIS CAUSE came before the Court on Plaintiffs' *Ex Parte* Application for Entry of Temporary Restraining Order and Preliminary Injunction (the "*Ex Parte* Application"). Plaintiffs Acushnet Company, Callaway Golf Company, Roger Cleveland Golf Company, Inc., SRI Sports Limited, Karsten Manufacturing Corporation, and Taylor Made Golf Company, Inc. (collectively "Plaintiffs") move *ex parte,* for entry of a temporary restraining order against Defendants, the Partnerships and Unincorporated Associations identified on Schedule "A" hereto (collectively "Defendants"), pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, for alleged violations of the Lanham Act. The Court has carefully reviewed the *Ex Parte* Application, the pertinent portions of the Record, and is otherwise fully advised in the premises.

### I. FACTUAL BACKGROUND[1]

Plaintiff Acushnet Company ("Acushnet") manufactures, promotes, distributes, and sells in interstate commerce, including within this Judicial District, quality golf equipment and related products under multiple federally registered trademarks. (*See* Declaration of Lisa Rogan in

---

[1] The factual background is taken from Plaintiffs' Complaint, *Ex Parte* Application, and supporting Declarations submitted by Plaintiffs.

Support of Plaintiffs' *Ex Parte* Application ["Rogan Decl."] ¶¶ 4-5.)  Acushnet is the registered

owner of the following trademarks on the Principal Register of the United States Patent and

Trademark Office (collectively the "Acushnet Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| TITLEIST | 316,118 | August 14, 1934 | IC 028 - golf balls |
| TITLEIST | 934,406 | May 23, 1972 | IC 028 - golf equipment comprising golf balls, golf clubs, golf bags, golf gloves and golf headcovers |
| *Titleist* | 1,155,766 | May 26, 1981 | IC 028 - golf equipment, namely, golf balls, golf clubs and golf bags |
| *Titleist* | 1,601,034 | June 12, 1990 | IC 028 -  golf balls |
| PRO V1 | 2,806,919 | January 20, 2004 | IC 028 - golf balls |
| TITLEIST | 3,176,825 | November 28, 2006 | IC 025 - headwear |
| AP2 | 3,831,911 | August 10, 2010 | IC 028 - golf clubs |
| AP2 | 3,831,914 | August 10, 2010 | IC 028 - golf clubs |

The Acushnet Marks are used in connection with the manufacture and distribution of goods in

the categories identified above. (*See* Rogan Decl. ¶ 5; *see also* Certificates of Registrations for

the Acushnet Marks attached as Composite Exhibit A to the Rogan Decl.)

Plaintiff  Callaway  Golf  Company  ("Callaway  Golf")  manufactures,  promotes,

distributes, and sells in interstate commerce, including within this Judicial District, quality golf

equipment and related products under multiple federally registered trademarks.  (*See* Declaration

of Mike Dow in Support of Plaintiffs' *Ex Parte* Application ["Dow Decl."] ¶¶ 4-5.) Callaway

Golf is the registered owner of the following trademarks on the Principal Register of the United

2

States Patent and Trademark Office (collectively the "Callaway Golf Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| Odyssey | 1,704,295 | July 28, 1992 | IC 028 - golf clubs, golf bags, golf club heads, golf club shafts, head covers for golf clubs, hand grips for golf clubs, and golf balls |
| Callaway Golf | 2,160,157 | May 26, 1998 | IC 024 - golf towels<br><br>IC 025 - shirts, sweaters, jackets, hats, caps and visors<br><br>IC 028 - golf clubs, golf bags, and golf club head covers |
| Callaway GOLF | 2,161,569 | June 2, 1998 | IC 024 - golf towels<br><br>IC 025 - shirts, sweaters, jackets, hats, caps, and visors<br><br>IC 028 - golf clubs, golf bags, and golf club head covers |
| Callaway | 2,166,033 | June 16, 1998 | IC 028 - golf clubs |
| Callaway | 2,360,664 | June 20, 2000 | IC 028 - golf balls |
| Big Bertha | 2,769,319 | September 30, 2003 | IC 028 - golf club, golf club head covers and golf bags |
| Callaway | 2,883,072 | September 7, 2004 | IC 025 - shirts, sweaters, jackets, wind resistant jackets, hats, caps, visors, pants, shorts, t-shirts, golf shoes and spikes |
| Callaway Golf | 2,941,846 | April 19, 2005 | IC 025 - golf shoes and spikes |
| FT-i | 3,263,223 | July 10, 2007 | IC 028 - golf clubs |
| FT-9 | 3,593,203 | March 17, 2009 | IC 028 - covers for golf clubs; golf club covers; golf clubs |
| BIG BERTHA DIABLO | 3,595,821 | March 24, 2009 | IC 028 - golf clubs; head covers for golf clubs; golf bags; golf balls |
| Callaway | 3,677,707 | September 1, 2009 | IC 028 - golf bags; golf balls; golf clubs; head covers for golf clubs |

| FT-iZ | 3,737,687 | January 12, 2010 | IC 028 - golf clubs, golf club head covers, golf bags and component club heads |
| X-24 HOT | 3,874,857 | November 9, 2010 | IC 028 - golf clubs |
| RAZR Hawk | 3,979,419 | June 14, 2011 | IC 028 - golf clubs |

The Callaway Golf Marks are used in connection with the manufacture and distribution of goods in the categories identified above. (*See* Dow Decl. ¶ 5; *see also* Certificates of Registrations for the Callaway Golf Marks attached as Composite Exhibit A to the Dow Decl.)

Plaintiff Roger Cleveland Golf Company, Inc., a subsidiary of Plaintiff SRI Sports Limited (jointly referred to herein as "Cleveland Golf") manufactures, promotes, distributes, and sells in interstate commerce, including within this Judicial District, quality golf equipment and related products under multiple federally registered trademarks. (*See* Declaration of Donald J. Reino in Support of Plaintiffs' *Ex Parte* Application ["Reino Decl."] ¶¶ 4-5.)   SRI Sports Limited is the registered owner, and Roger Cleveland Golf Company, Inc. is the licensee of the following trademarks on the Principal Register of the United States Patent and Trademark Office (collectively the "Cleveland Golf Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| *Cleveland* | 2,070,051 | June 10, 1997 | IC 018 - carry all bags and umbrellas.<br>IC 025 - golf apparel, namely, shirts, caps, visors, sweatshirts and sweater vests.<br>IC 028 - golf clubs, golf club heads, golf club shafts, golf club grips, golf bags, golf bag covers, and golf club head covers. |

| | | | |
|---|---|---|---|
| CLEVELAND | 2,070,054 | June 10, 1997 | IC 018 - carry all bags and umbrellas.<br><br>IC 025 - golf apparel, namely, shirts, caps, visors, sweatshirts and sweater vests.<br><br>IC 028 - golf clubs, golf club heads, golf club shafts, golf club grips, golf bags, golf bag covers, and golf club head covers. |
|  | 2,302,251 | December 21, 1999 | IC 028 - golf clubs, and golf club heads, namely, woods, irons and putters |
| SRIXON | 2,993,532 | December 16, 1997 | IC 025 - Golf wear, namely, caps.<br><br>IC 028 - Bags, namely, golf bags, equipment for golf, especially, but not limited to, golf balls, golf clubs. |
| ZIP GROOVES | 3,463,468 | July 8, 2008 | IC 028 - Golf clubs and golf club heads, namely, wedges, iron-type golf clubs and metal wood-type golf clubs and heads. |

The Cleveland Golf Marks are used in connection with the manufacture and distribution of goods in the categories identified above. (*See* Reino Decl. ¶ 5; *see also* Certificates of Registrations for the Cleveland Golf Marks attached as Composite Exhibit A to the Reino Decl.)

Karsten manufactures, promotes, distributes, and sells in interstate commerce, including within this Judicial District, quality golf equipment and related products under multiple federally registered trademarks. (*See* Declaration of Jud Hawken in Support of Plaintiffs' *Ex Parte* Application ["Hawken Decl."] ¶¶ 4-5.)   Karsten is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (the "Karsten Marks")

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| **PING** | 704,552 | September 20, 1960 | IC 28 - Golf clubs |

| RAPTURE | 3,249,950 | June 5, 2007 | IC 28 - Golf clubs. |
|---|---|---|---|
| *Rapture* | 3,262,365 | July 10, 2007 | IC 28 - Golf clubs. |
| G/10 | 3,454,841 | June 24, 2008 | IC 28 - Golf clubs. |
| *Rapture v2* | 3,538,346 | November 25, 2008 | IC 28 - Golf clubs. |
| RAPTURE V2 | 3,541,511 | December 2, 2008 | IC 28 - Golf clubs. |
| G15 | 3,696,930 | October 13, 2009 | IC 28 - Golf equipment, namely, golf clubs. |
| G15 | 3,716,878 | November 24, 2009 | IC 28 - Golf equipment, namely, golf clubs and golf bags. |
| K15 | 3,909,121 | January 18, 2011 | IC 25 - Headgear, namely caps and visors.<br>IC 28 - Golf club bags; Golf club covers; Golf clubs. |
| K15 | 3,949,344 | April 19, 2011 | IC 25 - Headgear, namely caps and visors.<br>IC 28 - Golf club bags; Golf clubs; Head covers for golf clubs. |

The Karsten Marks are used in connection with the manufacture and distribution of goods in the categories identified above. (*See* Hawken Decl. ¶ 5; *see also* Certificates of Registrations for the Karsten Marks attached as Composite Exhibit A to the Hawken Decl.)

Plaintiff Taylor Made Golf Company, Inc., a subsidiary of adidas AG ("TaylorMade-adidas Golf"), manufactures, promotes, distributes, and sells in interstate commerce, including within this Judicial District, quality golf equipment and related products under multiple federally registered trademarks. (*See* Declaration of Jeni B. Zuercher in Support of Plaintiffs' *Ex Parte* Application ["Zuercher Decl."] ¶¶ 4-5.) TaylorMade-adidas Golf is the registered owner of the following trademarks on the Principal Register of the United States Patent and Trademark Office (collectively the "TaylorMade-adidas Marks")

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| TAYLOR MADE | 1,200,542 | July 6, 1982 | IC 028 - Golf Clubs. |
| TAYLOR MADE | 1,374,009 | December 3, 1985 | IC 028 - golf bags and golf club head covers. |
| BURNER | 1,411,498 | September 30, 1986 | IC 028 - golf clubs. |
| RESCUE | 2,092,034 | August 26, 1997 | IC 028 - golf clubs. |
| *TaylorMade* | 2,557,110 | April 2, 2002 | IC 018 - Golf umbrellas, luggage and bags, namely, non-canvas tote bags, for golfers.<br><br>IC 025 - Clothing, namely, hats, visors, caps.<br><br>IC 028 - Golf equipment, namely golf clubs, golf grips, putters, shafts, golf balls, golf gloves, golf tees, golf club covers, and golf bags. |
| *T logo* | 2,557,111 | April 2, 2002 | IC 018 - Golf umbrellas, luggage and bags, namely, non-canvas tote bags, for golfers.<br><br>IC 025 - Clothing, namely, hats, visors, caps, shirts, skirts, blouses, sweaters, slacks, shorts, jackets, coats, pullovers, cardigans and shoes.<br><br>IC 028 - Golf equipment, namely golf clubs, golf grips, putters, shafts, golf balls, golf gloves, golf tees, golf club covers, and golf bags. |
| ROSSA | 2,820,220 | March 2, 2004 | IC 028 - Golf equipment, namely, golf clubs, golf grips, putters, shafts, golf club covers, and golf bags. |
| R7 | 2,960,850 | June 7, 2005 | IC 028 - Golf equipment, namely, golf clubs, wedges, irons, golf club heads, golf club shafts. |
| *r7 logo* | 3,032,873 | December 20, 2005 | IC 028 - Golf equipment, namely, golf clubs, shafts, golf club covers. |

| AGSI | 3,252,375 | June 12, 2007 | IC 028 - Golf equipment, namely golf clubs, golf putters, golf clubheads, golf clubhead inserts, golf club covers, and golf bags. |
|---|---|---|---|
| R9 | 3,652,607 | July 7, 2009 | IC 028 - Golf equipment, namely, golf clubs, golf heads, golf club shafts. |
| BURNER PLUS | 3,673,923 | August 25, 2009 | IC 028 - Golf clubs. |
| BURNER | 3,680,379 | September 8, 2009 | IC 028 - Golf balls |
|  | 3,868,743 | October 26, 2010 | IC 028 - golf equipment, namely, golf clubs, shafts, golf balls, golf gloves, golf club covers and golf bags. |
| R11 | 3,951,066 | April 26, 2011 | IC 028 - Golf equipment, namely, golf clubs, golf grips, golf club heads, golf club shafts, and golf bags. |

The TaylorMade-adidas Golf Marks are used in connection with the manufacture and distribution of goods in the categories identified above. (*See* Zuercher Decl. ¶ 5; *see also* Certificates of Registrations for the TaylorMade-adidas Golf Marks attached as Composite Exhibit A to the Zuercher Decl.)

Defendants, through the Internet websites operating under the domain names identified on Schedule "A" hereto (the "Subject Domain Names"), have advertised, promoted, offered for sale, and/or sold, at least, (i) golf clubs, golf balls, golf bags, golf gloves, golf headcovers, and headwear bearing what Acushnet has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the Acushnet Marks; (ii) golf clubs, golf club head covers, golf balls, golf bags, golf shoes, and caps bearing what Callaway Golf has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the Callaway Golf Marks; (iii) golf clubs, golf bags, and golf club head covers bearing what Cleveland Golf has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the

Cleveland Golf Marks; (iv) golf clubs, golf bags, and head covers for golf clubs bearing what Karsten has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the Karsten Marks; and (v) golf clubs, golf club covers, golf putters, golf balls, golf bags, umbrellas, and caps bearing what TaylorMade-adidas Golf has determined to be counterfeits, infringements, reproductions, and/or colorable imitations of the TaylorMade-adidas Golf Marks. (*See* Rogan Decl. ¶¶ 11-17; Dow Decl. ¶¶ 11-17; Reino Decl. ¶¶ 11-17; Hawken Decl. ¶¶ 11-17; Zuercher Decl. ¶¶ 11-17.) Although each Defendant may not copy and infringe each of Plaintiffs' individual trademarks for each category of goods protected, Plaintiffs have submitted sufficient evidence showing each Defendant has infringed, at least, one or more of the trademarks at issue. (Rogan Decl. ¶¶ 15-17; Dow Decl. ¶¶ 15-17; Reino Decl. ¶¶ 15-17; Hawken Decl. ¶¶ 15-17; Zuercher Decl. ¶¶ 15-17.) Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, and/or colorable imitations of the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and TaylorMade-adidas Golf Marks (collectively "Plaintiffs' Marks"). (*See* Rogan Decl. ¶ 11; Dow Decl. ¶ 11; Reino Decl. ¶ 11; Hawken Decl. ¶ 11; Zuercher Decl. ¶ 11.)

Plaintiffs retained Investigative Consultants, a licensed private investigative firm, to investigate the sale of counterfeit versions of Plaintiffs' respective products by Defendants. (*See* Rogan Decl. ¶ 12; Dow Decl. ¶ 12; Reino Decl. ¶ 12; Hawken Decl. ¶ 12; Zuercher Decl. ¶ 12; Declaration of Brandon Tanori in Support of Plaintiffs' *Ex Parte* Application ["Tanori Decl."] ¶ 3.) In December 2011, Brandon Tanori ("Tanori"), an employee of Investigative Consultants, placed an order for the purchase of (i) a golf club bearing the Acushnet Marks at issue through the Internet website operating under the domain name **golfclubsforsales.com**; (ii) a set of golf clubs bearing the Callaway Golf Marks at issue via the Internet website operating under the

domain name **golfonlinewholesale.com**; (iii) a golf club bearing the Cleveland Golf Marks at issue via the Internet website operating under the domain name **wholesalegolfinchina.com**; (iv) a golf club bearing the Karsten Marks at issue via the Internet website operating under the domain name **wholesaleclubsgolf.com**; and a golf club bearing the TaylorMade-adidas Golf Marks at issue via the Internet website operating under the domain name **discountgolfbase.com**. (See Tanori Decl. ¶¶ 4-13 and Composite Exhibits A through J attached thereto.)

Thereafter, the golf clubs bearing Plaintiffs' individual trademarks purchased by Tanori were inspected by Plaintiffs' respective representatives, and each determined the items to be non-genuine, unauthorized versions of Plaintiffs' respective products. (*See* Rogan Decl. ¶ 14; Dow Decl. ¶ 14; Reino Decl. ¶ 14; Hawken Decl. ¶ 14; Zuercher Decl. ¶ 14.) Additionally, Plaintiffs' representatives each reviewed and visually inspected the items bearing Plaintiffs' respective trademarks offered for sale on the Internet websites operating under the relevant Subject Domain Names and determined the products were unauthorized, non-genuine versions of Plaintiffs' respective products.  (*See* Rogan Decl. ¶ 15; Dow Decl. ¶ 15; Reino Decl. ¶ 15; Hawken Decl. ¶ 15; Zuercher Decl. ¶ 15.)

## II.  LEGAL STANDARD

In order to obtain a temporary restraining order, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non- movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F. 3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case). Additionally, a court may only issue a temporary

restraining order without notice to the adverse party or its attorney if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).  *Ex parte* temporary restraining orders "should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer." *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameida Cnty, etc.*, 415 U.S. 423, 439 (1974).

### III. ANALYSIS

The declarations Plaintiffs submitted in support of their *Ex Parte* Application support the following conclusions of law:

A.     Plaintiffs have a very strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of golf equipment and related goods bearing counterfeits, reproductions, and/or colorable imitations of Plaintiffs' Marks, and that the products Defendants are selling are copies of Plaintiffs' respective products that bear copies of the Acushnet Marks on golf clubs, golf balls, golf bags, golf gloves, golf headcovers, and headwear, the Callaway Golf Marks on golf clubs, golf club head covers, golf balls, golf bags, golf shoes, and caps, the Cleveland Golf Marks on golf clubs, golf bags, and golf club head covers, the Karsten Marks on golf clubs, golf bags, and head covers for golf clubs, and the TaylorMade-adidas Golf Marks on golf clubs, golf club covers, golf putters, golf balls, golf bags, umbrellas, and caps.

B.     Because of the infringement of the Plaintiffs' Marks, Plaintiffs are likely to suffer immediate and irreparable injury if a temporary restraining order is not granted. It clearly

appears from the following specific facts, as set forth in Plaintiffs' Complaint, *Ex Parte* Application, and accompanying declarations on file, that immediate and irreparable loss, damage, and injury will result to Plaintiffs and to consumers before Defendants can be heard in opposition unless Plaintiffs' request for *ex parte* relief is granted:

      1.      Defendants own or control Internet businesses which advertise, promote, offer for sale, and sell, at least golf clubs, golf balls, golf bags, golf gloves, golf headcovers bearing counterfeit and infringing trademarks in violation of Acushnet's rights; golf clubs, golf club head covers, golf balls, golf bags, golf shoes, and caps bearing counterfeit and infringing trademarks in violation of Callaway Golf's rights; golf clubs, golf bags, and golf club head covers bearing counterfeit and infringing trademarks in violation of Cleveland Golf's rights; golf clubs, golf bags, and head covers for golf clubs bearing counterfeit and infringing trademarks in violation of Karsten's rights; and golf clubs, golf club covers, golf putters, golf balls, golf bags, umbrellas, and caps bearing counterfeit and infringing trademarks in violation of TaylorMade-adidas Golf's rights;

      2.      There is good cause to believe that more counterfeit and infringing products bearing Plaintiffs' respective trademarks will appear in the marketplace; that consumers may be misled, confused, and disappointed by the quality of these products; and that Plaintiffs may suffer loss of sales for their respective genuine products;

      3.      There is good cause to believe that if Plaintiffs proceed on notice to Defendants on this *Ex Parte* Application, Defendants can easily and quickly transfer the registrations for many of the Subject Domain Names, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief;

4.     The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a temporary restraining order is issued is far outweighed by the potential harm to Plaintiffs, their respective reputations, and goodwill as a manufacturer of high quality products if such relief is not issued; and

5.     The public interest favors issuance of the temporary restraining order in order to protect Plaintiffs' trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as genuine goods of the respective Plaintiffs.

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order is hereby **GRANTED** as follows:

(1)     Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order are hereby temporarily restrained:

a.  From manufacturing, importing, advertising, promoting, offering to sell, selling, distributing, or transferring any products bearing the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks, or any confusingly similar trademarks, other than those actually manufactured or distributed by Plaintiffs; and

b.  From secreting, concealing, destroying, selling off, transferring, or otherwise disposing of: (i) any products, not manufactured or distributed by Plaintiffs, bearing the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks, or any confusingly similar trademarks; or (ii) any evidence relating to the manufacture, importation, sale, offer for sale, distribution, or transfer of any products bearing the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks, or any confusingly similar trademarks.

13

(2)     Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue the use of the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks or any confusingly similar trademarks, on or in connection with all Internet websites owned and operated, or controlled by them, including the Internet websites operating under the Subject Domain Names;

(3)     Each Defendant, their officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with them having notice of this Order shall immediately discontinue the use of the Acushnet Marks, Callaway Golf Marks, Cleveland Golf Marks, Karsten Marks, and/or TaylorMade-adidas Golf Marks, or any confusingly similar trademarks within domain name extensions, metatags or other markers within website source code, from use on any webpage (including as the title of any web page), any advertising links to other websites, from search engines' databases or cache memory, and any other form of use of such terms which is visible to a computer user or serves to direct computer searches to websites registered by, owned, or operated by each Defendant, including the Internet websites operating under the Subject Domain Names;

(4)     Each Defendant shall not transfer ownership of the Subject Domain Names during the pendency of this Action, or until further Order of the Court;

(5)     The domain name Registrars for the Subject Domain Names are directed to transfer to Plaintiffs' counsel, for deposit with this Court, domain name certificates for the Subject Domain Names;

14

(6)    Upon Plaintiffs' request, the privacy protection service for any Subject Domain Names for which the Registrant uses such privacy protection service to conceal the Registrant's identity and contact information are ordered to disclose to Plaintiffs the true identities and contact information of those Registrants;

(7)    Upon entry of this Order, Plaintiffs shall provide a copy of the Order by email to the registrar of record for each of the Subject Domain Names, so that the registrar of record of each of the Subject Domain Names may, in turn, notify each registrant of the Order and provide notice of the locking of the domain name to the registrant of record. After providing such notice to the registrars so the domain names may be locked, Plaintiffs shall also provide notice and a copy of this Order to the registrant of each Subject Domain Name via email to the email address provided as part of the domain registration data for each of the Subject Domain Names identified in the *Ex Parte* Application. If an email address was not provided as part of the domain registration data for a Subject Domain Name, Plaintiffs shall provide notice and a copy of this Order to the operators of the Internet websites via an email address and/or online submission forms provided on the Internet websites operating under such Subject Domain Names. After forty-eight (48) hours have elapsed after the emailing of this Order to the registrars of record and the registrants, Plaintiffs shall provide a copy of this Order to the registries for the Subject Domain Names for the purposes described in Paragraph 8, *infra;*

(8)    The Registrars and the top-level domain (TLD) Registries for the Subject Domain Names, within ten (10) business days of receipt of this Order, shall, change or assist in changing, the Registrar of record for the Subject Domain Names, excepting any such domain names which such Registries have been notified in writing by Plaintiffs have been or will be dismissed from this action, to a holding account with the United States based Registrar, GoDaddy.com, Inc. As a

matter of law, this Order shall no longer apply to any Defendant or associated domain name dismissed from this action. Upon the change of the Registrar of record for the Subject Domain Names to GoDaddy.com, Inc., GoDaddy.com, Inc. will maintain access to the Subject Domain Names in trust for the Court during the pendency of this action. Additionally, GoDaddy.com, Inc. shall immediately update the Domain Name System ("DNS") data it maintains for the Subject Domain Names, which link the domain names to the IP addresses where their associated websites are hosted, to NS1.MEDIATEMPLE.NET and NS2.MEDIATEMPLE.NET, which will cause the domain names to resolve to the website where copies of the Complaint, Summonses, Temporary Restraining Order, and other documents on file in this action are displayed. Alternatively, GoDaddy.com, Inc. may institute a domain name forwarding which will automatically redirect any visitor to the Subject Domain Names to the following Uniform Resource Locator ("URL") **http://servingnotice.com/gwg2/index.html** whereon copies of the Complaint, Summonses, the Temporary Restraining Order, and all other documents on file in this action are displayed. After GoDaddy.com, Inc. has effected this change the Subject Domain Names shall be placed on Lock status, preventing the modification or deletion of the domains by the Registrar or Defendants

(9)   Plaintiffs may enter the Subject Domain Names into Google's Webmaster Tools and cancel any redirection of the domains that have been entered there by Defendants which redirect traffic to the counterfeit operations to a new domain name and thereby evade the provisions of this Order;

(10)   Each Defendant shall preserve copies of all their computer files relating to the use of any of the Subject Domain Names and shall take all steps necessary to retrieve computer files relating to the use of the Subject Domain Names that may have been deleted before the entry of

16

this Order;

(11)   This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further dates as set by the Court or stipulated to by the parties;

(12)   Pursuant to 15 U.S.C. § 1116(d)(5)(D), Plaintiffs shall post a bond in the amount of One Thousand Dollars and Zero Cents ($1,000.00), as payment of damages to which Defendants may be entitled for a wrongful injunction or restraint. Plaintiffs shall post the bond prior to requesting the registries change to the registrar of record for the Subject Domain Names to a holding account with GoDaddy.com, Inc.;

(13)   A hearing is set before this Court in the United States Courthouse located at 400 North Miami Avenue, Miami, Florida 33128, Courtroom 11-4, on Tuesday, March 13, 2012 at 9:00 a.m., or at such other time that this Court deems appropriate, at which time Defendants and/or any other affected persons may challenge the appropriateness of this Order and move to dissolve the same and at which time the Court will hear argument on Plaintiffs' requested preliminary injunction;

(14)   Plaintiffs shall serve copies of the *Ex Parte* Application and this Order and all other pleadings and documents on file in this action on Defendants by email as described above and by posting copies of the *Ex Parte* Application and this Order on the website located at **http://servingnotice.com/gwg2/index.html** within forty-eight (48) hours of control of the Subject Domain Names being changed to the Court via the GoDaddy.com, Inc. holding account, and such notice so given shall be deemed good and sufficient service thereof. Plaintiffs shall continue to provide notice of these proceedings and copies of the documents on file in this matter to Defendants by regularly updating the website located at

**http://servingnotice.com/gwg2/index.html** or by other means reasonably calculated to give notice which is permitted by the Court. Any response or opposition to Plaintiffs' Motion for Preliminary Injunction must be filed and served on Plaintiffs' counsel by March 9, 2012 at noon. Plaintiffs shall file any Reply Memorandum on or before March 12, 2012 at noon. The above dates may be revised upon stipulation by all parties and approval of this Court. Defendants are hereby on notice that failure to appear at the hearing may result in the imposition of a preliminary injunction against them pursuant to 15 U.S.C. § 1116(d) and Fed. R. Civ. P. 65.

DONE AND ORDERED in chambers in Miami, Florida, this 2nd day of March, 2012.

PATRICIA A. SEITZ
United States District Judge

Time: 12:05 p.m.

cc:   All Counsel of Record

18

## SCHEDULE A
## DEFENDANTS BY NUMBER AND SUBJECT DOMAIN NAMES

Defendant 1:   100golfclubs.com

Defendant 2:   100golfwholesale.com

Defendant 3:   100yeartrade.com

Defendant 4:   118golfclubs.com

Defendant 5:   1stgolfshop.com

Defendant 6:   24discountgolf.com
usmadegolf.com

Defendant 7:   24globalgolf.com
onlinegolfcity.com

Defendant 8:   bestdiscountgolf.com

Defendant 9:   bestgolfcheap.com
thecheapgolf.com

Defendant 10:   bestgolfwholesale.com
wholesalegolfplace.com

Defendant 11:   bestwholesalegolf.com
golfbestwholesale.com

Defendant 12:   bigworldgolf.com

Defendant 13:   buycheapgolf.com
cheapgolfzone.com

Defendant 14:   buychinagolf.com

Defendant 15:   buyingbestgolf.com
godiscountstore.com

Defendant 16:   buyinggolfonline.com

Defendant 17:   bwgolf88.com

Defendant 18:   cheapgolfbase.com
yourgolfmall.com

Defendant 19:   cheapgolfclubsshop.com

Defendant 20:   cheapgolfhouse.com
cheapgoodgolf.com

Defendant 21:   cheapgolfmall.com

Defendant 22:   cheapgolfonline.co.uk

Defendant 23:   cheapgolfonsale.com

Defendant 24:   cheapgolfsales.com

Defendant 25:   chinadiscountgolf.com

Defendant 26:   chinawholesalestock.com

19

| | |
|---|---|
| Defendant 27: | customizegolf.com |
| Defendant 28: | dandygolfs.com |
| Defendant 29: | dhlgolf.com |
| Defendant 30: | discountgolf18.com |
| | hotgolfdeal.com |
| Defendant 31: | discountgolf4sale.com |
| Defendant 32: | discountgolfbase.com |
| Defendant 33: | discountgolfclubs4u.com |
| Defendant 34: | discountgolfprice.com |
| Defendant 35: | discountgolfspace.com |
| Defendant 36: | discountpricegolf.com |
| Defendant 37: | discountsgolfclubs.com |
| Defendant 38: | discountsgolfonline.com |
| | golfdiscountsales.com |
| Defendant 39: | edangolf.com |
| Defendant 40: | enjoymygolf.com |
| Defendant 41: | excitegolf.com |
| Defendant 42: | factory-golf.com |
| Defendant 43: | feelgolfclubs.com |
| Defendant 44: | golf18wholesale.com |
| Defendant 45: | golf365shop.com |
| Defendant 46: | golfbargainoffers.com |
| Defendant 47: | golfbuyus.com |
| Defendant 48: | golfcheapclubs.com |
| Defendant 49: | golfclubgate.com |
| Defendant 50: | golfclubs2011.com |
| Defendant 51: | golfclubs365.com |
| Defendant 52: | golfclubs80.com |
| Defendant 53: | golfclubsforsales.com |
| Defendant 54: | golfclubshow.com |
| Defendant 55: | golfclubsnet.com |
| Defendant 56: | golfclubsoff.com |
| | ilikegolf.org |
| Defendant 57: | golfclubsonline18.com |
| Defendant 58: | golfclubssupplier.com |
| Defendant 59: | golfclubswarehouse.com |

| | |
|---|---|
| Defendant 60: | golfdiscount4sale.com |
| Defendant 61: | golfdiscountnow.com |
| Defendant 62: | golfdiscountstore18.com |
| Defendant 63: | golfequipment18.com |
| Defendant 64: | golffactorystore.com |
| Defendant 65: | golffordiscount.com |
| Defendant 66: | golfforester.com |
| Defendant 67: | golfforsales.com |
| Defendant 68: | golfforwholesale.com |
| Defendant 69: | golfinstock.com |
| Defendant 70: | golfironheadcovers.com |
| Defendant 71: | golfmart365.com |
| Defendant 72: | golfmartdiscount.com |
| Defendant 73: | golfnewland.com |
| Defendant 74: | golfollow.com |
| Defendant 75: | golfonline118.com |
| Defendant 76: | golfonline365.com |
| Defendant 77: | golfonlinewholesale.com |
| Defendant 78: | golfplayer18.com |
| Defendant 79: | golfsaleshop.com |
| Defendant 80: | golfshopping18.com |
| Defendant 81: | golfshoppingshop.com |
| Defendant 82: | golfshoppingtoday.com |
| Defendant 83: | golfshopshopping.com |
| Defendant 84: | golfstockonline.com |
| Defendant 85: | golfstockstore.com<br>newgolfstock.com |
| Defendant 86: | golfsuper365.com<br>golfreverie.com |
| Defendant 87: | golfwholesaleshop.com |
| Defendant 88: | golfworld365.com |
| Defendant 89: | gtbshopgolf.com |
| Defendant 90: | hygolfcn.com |
| Defendant 91: | ifgolfer.com |
| Defendant 92: | igolfspy.com<br>onlinegolfforsale.com |

Defendant 93:   igolfyoo.com
                golfplayeroutlets.com
Defendant 94:   isportinggood.com
Defendant 95:   luckygolf18.com
Defendant 96:   luckygolfclubs.com
Defendant 97:   mycheapgolf.com
Defendant 98:   mygolfsale.com
Defendant 99:   mygolfshops.org
Defendant 100:  mygolfstorehouse.com
                golfwholesalemart.com
Defendant 101:  myprowholesale.com
Defendant 102:  mywholesalegolf.com
Defendant 103:  newgoalgolf.com
Defendant 104:  newgolfoutlet.com
Defendant 105:  okeygolf.com
Defendant 106:  okgolfclubs.com
                okgolf365.com
Defendant 107:  onlinebuyinggolf.com
Defendant 108:  onlinegolfwholesale.com
                onlinegolfwholesaler.com
Defendant 109:  oobgolfclubs.com
                8golfclubs.com
Defendant 110:  ordergolfonline.com
                cheapgolfspace.com
Defendant 111:  perfectoutdoorgame.com
Defendant 112:  r11golf.com
Defendant 113:  r9robingolf.com
Defendant 114:  shakegolf.com
Defendant 115:  sony-golf.com
Defendant 116:  specialpricegolf.com
Defendant 117:  surpassmall.com
Defendant 118:  timetoshopping.com
Defendant 119:  tobuygolf.com
Defendant 120:  topgolfseller.com
Defendant 121:  uesgolf.com
Defendant 122:  wholesaleclubsgolf.com
Defendant 123:  wholesalegolfinchina.com

Defendant 124:   wholesalegolfmart.com
                 salegolfsets.com

Defendant 125:   wholesalegolfseller.com

Defendant 126:   wholesalegolfsets.com

Defendant 127:   wholesalegolftown.com
                 cheapstoregolf.com

Defendant 128:   wholesalegolfworld.com

Defendant 129:   worldgolfsale.com

Defendant 130:   wowogolf.com

Defendant 132:   xw007golf.com